**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| MIDSTATES PETROLEUM COMPANY, INC., *et al.*,[1] | § | Case No. 16-32237 (DRJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION AND POSTPETITION TAXES AND FEES**

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR MAY 2, 2016 AT 3:30 P.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (together, the "Debtors") respectfully state the following in support of this motion (this "Motion").

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Midstates Petroleum Company, Inc. (1816) and Midstates Petroleum Company LLC (2434). The debtors' service address is: 321 South Boston Avenue, Suite 1000, Tulsa, Oklahoma 74103.

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the Debtors to remit and pay (or use tax credits to offset) certain prepetition taxes and fees that accrued prior to the commencement of these chapter 11 cases and that will become payable during the pendency of these chapter 11 cases and (b) authorizing the Debtors to remit and pay (or use tax credits to offset) certain taxes and fees that arise or accrue in the ordinary course of business on a postpetition basis.

## Jurisdiction, Venue, and Procedural Background

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. On April 30, 2016 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Nelson M. Haight in Support of Chapter 11 Petitions and First Day Motions*, filed contemporaneously with this Motion.

## The Debtors' Tax and Fee Obligations

5. The Debtors collect, withhold, and incur sales, use, income, withholding, franchise, severance, and property taxes, as well as other business, environmental, and regulatory

fees (collectively, the "Taxes and Fees").[2] The Debtors remit the Taxes and Fees to various federal, state, and local governments, including taxing and licensing authorities (collectively, the "Authorities"). A schedule identifying the Authorities is attached hereto as **Exhibit B**.[3] Taxes and Fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions. The Debtors estimate that approximately $125,000 in Taxes and Fees relating to the prepetition period will become payable to the Authorities after the Petition Date, all of which the Debtors estimate will become due and owing during the first 21 days following the Petition Date.

6. The Debtors pay the Taxes and Fees to the Authorities on a periodic basis, remitting them monthly, quarterly, semiannually, or annually, depending on the particular Tax or Fee. The Debtors believe that they are substantially current with respect to their payment of accrued prepetition Taxes and Fees that were payable as of the Petition Date. By this Motion, the Debtors seek authority to make such payments where, to the extent necessary: (a) Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; and/or (d) Taxes and Fees incurred for prepetition periods become payable after the commencement of these chapter 11 cases.

---

2 By this Motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings. Such relief is instead requested in the *Debtors' Emergency Motion for Entry of an Order Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, Reimbursable Expenses, and Director Obligations and (B) Continue Employee Benefits Programs*, filed contemporaneously herewith.

3 To the extent that the Debtors inadvertently omitted any Authority from **Exhibit B**, the Debtors request that any relief granted under this Motion with respect to Taxes and Fees apply to all Authorities, regardless of whether any such Authority is specifically identified on **Exhibit B**.

7. As a preliminary matter, the Debtors collect and hold funds to satisfy certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and any such funds may not constitute property of the Debtors' estates. In addition, the Debtors' failure to pay the Taxes and Fees, including those Taxes and Fees that are liabilities of non-Debtor affiliates, could materially affect stakeholder value. ***First***, the Authorities could initiate audits, suspend operations, file liens, or seek to lift the automatic stay, which would unnecessarily divert the Debtors' attention during their restructuring. ***Second***, failure to pay Taxes and Fees could potentially subject certain of the Debtors' directors, managers, and officers to claims of personal liability. ***Third***, failure to pay the Taxes and Fees (such as franchise taxes) likely would cause the Debtors to lose their ability to conduct business in certain jurisdictions. ***Fourth***, unpaid Taxes and Fees may result in penalties and/or the accrual of interest which would negatively affect stakeholder value.

| **Category** | **Description** | **Approximate Amount Accrued as of Petition Date** | **Approximate Amount Due Within 21 Days** |
|---|---|---|---|
| Sales and Use Taxes | Taxes imposed on the sale and use of certain goods and services. | $45,000.00 | $45,000.00 |
| Income and Withholding Taxes | Taxes imposed on the Debtors' income and required to conduct business in the ordinary course. | $40,000.00 | $40,000.00 |
| Franchise Taxes | Taxes required to conduct business in the ordinary course. | $60,000.00 | $0.00 |
| Property Taxes | Taxes and obligations related to real and personal property holdings, including ownership interests in properties producing oil, natural gas, and natural gas liquids. | $800,000.00 | $0.00 |
| Severance Taxes | Taxes related to natural resource extraction, including oil, natural gas, and natural gas liquids production. | $40,000.00 | $40,000.00 |
| Environmental and Business Fees | Fees related to compliance with environmental laws and regulations, licensing fees, and other fees paid to state agencies. | $4,000.00 | $0.00 |
| | **Total** | $989,000.00 | $125,000.00 |

**I. Sales and Use Taxes.**

8. The Debtors purchase a variety of equipment, materials, and supplies necessary for the operation of their businesses from vendors who may not operate in the state where the property is to be delivered and, therefore, do not charge the Debtors sales tax in connection with such purchases. In some cases, the Debtors have agreed with these vendors to remit any sales taxes directly to the Authorities. In any event, applicable law generally requires the Debtors to subsequently pay use taxes on such purchases to the applicable Authorities, which amounts can vary greatly from month-to-month depending on the types and quantities of purchases made. The Debtors generally remit such sales and use taxes (collectively, the "Sale and Use Taxes") on a quarterly or monthly basis. In 2015, the Debtors paid approximately $534,884 in Sales and Use Taxes. As of the Petition Date, the Debtors estimate that they owe approximately $45,000 to the relevant Authorities on account of prepetition Sales and Use Taxes, all of which the Debtors estimate will become due and owing during the first 21 days following the Petition Date. The Debtors seek authority to honor outstanding prepetition obligations on account of Sales and Use Taxes in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

**II. Income and Withholding Taxes.**

9. In the ordinary course of operating their businesses, the Debtors incur state and federal income and withholding taxes (collectively, the "Income and Withholding Taxes"). In 2015, the Debtors did not have any federal income tax liability due to net losses from continuing operations, and the Debtors to not expect to pay any federal income tax in the current year.

10. The Debtors also are required to remit withholding taxes to cover state income taxes for non-residents in certain states in which they operate, as well as federal withholding

taxes. The Debtors pay withholding taxes on either a monthly or quarterly basis. In 2015, the Debtors paid approximately $1.3 million in Oklahoma non-residential withholding taxes. As of the Petition Date, the Debtors believe that they owe approximately $40,000 to the relevant Authorities on account of prepetition Income and Withholding Taxes, all of which the Debtors estimate will become due and owing during the first 21 days of the Petition Date. The Debtors seek authority to honor any outstanding prepetition obligations on account of Income and Withholding Taxes in the ordinary course of business and consistent with past practice to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

**III. Franchise Taxes.**

11. In the ordinary course of operating their businesses, the Debtors may incur various state franchise taxes (collectively, the "Franchise Taxes") to continue conducting their businesses pursuant to state laws. More specifically, in 2015, the Debtors paid approximately $181,259 in Franchise Taxes. Based on this historical amount, as of the Petition Date, the Debtors believe that they owe approximately $60,000 to the relevant Authorities on account of prepetition Franchise Taxes, none of which will become due and owing during the first 21 days following the Petition Date. The Debtors seek authority to honor outstanding prepetition obligations on account of Franchise Taxes in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

**IV. Property Taxes.**

12. State and local laws in the jurisdictions in which the Debtors operate generally grant Authorities the power to levy property taxes, including ad valorem taxes (collectively, the "Property Taxes"), against the Debtors' real and personal property. To avoid the imposition

of statutory liens on their real and personal property, the Debtors typically pay the Property Taxes in the ordinary course of business on an annual or semi-annual basis.

13. In 2015, the Debtors paid approximately $2.3 million in Property Taxes to the applicable Authorities. This amount includes Property Taxes collected from third parties and paid to the applicable Authorities. For example, where the Debtors act as the operator on an oil or gas lease, they have historically remitted the full amount of Property Taxes due on the lease and then set off such amount by a *pro rata* amount against contributions from the non-operating joint interest holders on such lease.

14. As of the Petition Date, the Debtors will have accrued prepetition Property Taxes, particularly ad valorem taxes. However, because the amount of such obligations are primarily based on the assessed value of the Debtors' properties, which in turn heavily depends on the ascribed value of their mineral reserves, the Debtors are not able to reliably assess the amount of prepetition Property Taxes outstanding. The Debtors expect that such prepetition amounts will be generally consistent with the historical accrual rate for Property Taxes, which amounts to approximately $800,000. No prepetition Property Taxes will become due and owing during the first 21 days following the Petition Date.

15. The Debtors seek authority to honor outstanding prepetition obligations on account of Property Taxes in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a post-petition basis.

**V. Severance Taxes.**

16. A number of the jurisdictions in which the Debtors operate impose severance taxes or gross production taxes (collectively, the "Severance Taxes"). Generally, Severance Taxes are a tax on "severing" natural resources, such as oil and gas, from the land or waters

within a state or jurisdiction. Severance Taxes vary by state, but typically are calculated as a percentage of either the value or volume of oil and gas produced, or some combination thereof. The Debtors pay Severance Taxes on either a monthly or quarterly basis. In 2015, the Debtors paid approximately $1.7 million in Severance Taxes to the applicable Authorities. Payment of certain of the Debtors' Severance Tax obligations is made by purchasers who withhold and remit such amounts to the appropriate Authorities. Although certain of these Severance Taxes will be remitted by third parties, as of the Petition Date, the Debtors estimate that they owe approximately $40,000 to the relevant Authorities on account of prepetition Severance Taxes, all of which the Debtors estimate will become due and owing during the first 21 days following the Petition Date. The Debtors seek authority to honor outstanding prepetition obligations on account of Severance Taxes in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

**VI. Environmental and Other Fees.**

17. The Debtors incur a variety of fees related to environmental and conservation laws and regulations, business licensing and annual impact fees, permitting, and participation in state regulatory agencies and boards (collectively, the "Environmental and Other Fees"). The Debtors remit the Environmental and Other Fees to the applicable Authorities on a monthly, quarterly, or annual basis, depending on the particular Fee. In 2015, the Debtors paid approximately $11,907 in Environmental and Other Fees to the applicable Authorities. As of the Petition Date, the Debtors estimate that they owe approximately $4,000 on account of prepetition Environmental and Other Fees, none of which will become due and owing during the first 21 days after the Petition Date. The Debtors seek authority to honor outstanding prepetition obligations on account of Environmental and Other Fees in the ordinary course of business and

consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

## Basis for Relief

### I. Payment of the Taxes and Fees Is Necessary and Appropriate.

18. Any failure to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways: (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) certain of the Debtors' directors, managers, and officers could be subject to claims of personal liability. In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates. Moreover, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both, all to the detriment of the Debtors' stakeholders.

#### A. Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.

19. Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990); *DiChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 433–34 (2d Cir. 1985) (holding that a sales tax that is required by state law to be collected by sellers from their customers is a "trust fund" tax); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 97 (3rd Cir. 1994) (holding that income required to be withheld by city ordinance and state law is held "in trust" for the taxing authority); *In re Al Copeland Enter., Inc.*, 991 F.2d 233, 237 (5th Cir. 1993); *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D.

Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."). Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[4]

**B. Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code.**

20. Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

**C. Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

21. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business

[4] For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g., Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res.Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) (noting that there were "legitimate business justifications" for the proposed sales). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

22. This standard is satisfied here. The Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations. If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, managers, officers, or other employees, thereby distracting these key personnel from the administration of the Debtors' chapter 11 cases. *See, e.g., In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the

employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)). Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' personnel is integral to the Debtors' continued operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

23. Furthermore, the Debtors' liability to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the claims for Taxes and Fees, which amounts may also be entitled to priority treatment. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes and Fees as they come due may, thus, ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors. *See* 11 U.S.C. §§ 507(a)(8)(C) and 507(a)(8)(G). Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

24. Courts in this district and elsewhere routinely approve relief similar to that requested herein. *See, e.g.*, *In re Goodrich Petrol. Corp.*, No. 16-31975 (MI) (Bankr. S.D. Tex. Apr. 18, 2016); *In re Energy XXI Ltd*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2016); *In re Southcross Holdings, LP*, No. 16-2011 (MI) (Bankr. S.D. Tex. Mar. 29, 2016); *In re Sherwin*

*Alumina Co.*, No. 16-20012 (DRJ) (Bank. S.D. Tex. Jan. 13, 2016); *In re RAAM Glob. Energy Co.*, No. 15-35615 (MI) (Bankr. S.D. Tex. Nov. 18, 2015); *In re Crusader Energy Grp., Inc.*, No. 09-31797 (BJH) (Bankr. N.D. Tex. Apr. 2, 2009 and May 7, 2009); *In re Energy Partners Ltd.*, No. 09-32957 (JB) (Bankr. S.D. Tex. May 8, 2009); *In re Daisytek, Inc.*, No. 03-34762 (HDH) (Bankr. N.D. Tex. May 12, 2003); *In re Mosaic Grp. (US) Inc.*, No. 02-81440 (HDH) (Bankr. N.D. Tex. Dec. 27, 2002).[5]

**II. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

25. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and cash on hand. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**Emergency Consideration**

26. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

27. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Reservation of Rights**

28. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim; (c) a promise or requirement to pay a prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**Notice**

29. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' first

lien credit facility; (d) the indenture trustee for the Debtors' second lien notes; (e) the indenture trustee for the Debtors' third lien notes; (f) counsel to the ad hoc committees of holders of claims specified in clauses (d) and (e); (g) the indenture trustees for the Debtors' senior unsecured notes due 2020 and 2021; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; (k) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (l) the state attorneys general for states in which the Debtors conduct business; (m) the Authorities; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

**No Prior Request**

30. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: May 1, 2016
Houston, Texas

*/s/ Patricia B. Tomasco*

Patricia B. Tomasco (TX Bar No. 01797600)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: ptomasco@jw.com
mcavenaugh@jw.com
jwertz@jw.com

-and-

Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
joshua.sussberg@kirkland.com

-and-

James H.M. Sprayregen, P.C. (*pro hac vice* admission pending)
William A. Guerrieri (*pro hac vice* admission pending)
Jason Gott (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
Email: will.guerrieri@kirkland.com
Email: jason.gott@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on May 1, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Patricia B. Tomasco*
One of Counsel